# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )  Criminal Case No. 04-93 (RJL) |
| | ) |
| MATTHEW WEST, | ) |
| | ) |
| Defendant/Petitioner. | ) |

**FILED**

**JUL 1 3 2018**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(July 12, 2018) [Dkts. # 57, 60]

Petitioner Matthew West ("defendant" or "West") moves to vacate and correct his sentence under 28 U.S.C. § 2255. *See* Suppl. Mot. to Vacate J. Under 28 U.S.C. § 2255 ("Pet.'s Suppl. Mot.") [Dkt. # 60]; Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Pet.'s Mot.") [Dkt. # 57]. Following his conviction for possessing a firearm as a convicted felon, West was sentenced as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). In his § 2255 pleadings, West argues that his sentence is invalid in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which struck down as unconstitutionally vague a provision of ACCA known as the "residual clause."

With the residual clause invalidated, West contends that he no longer qualifies as an armed career criminal under ACCA. Specifically, West asserts that his prior felony convictions for New Jersey second-degree aggravated assault, third-degree aggravated assault, and second-degree robbery do not constitute "violent felon[ies]" under ACCA's remaining applicable provision, known as the "elements clause." Pet.'s Suppl. Mot. 2;

*see* 18 U.S.C. § 924(e)(2)(B). That is so, according to West, because: 1) the New Jersey assault statute requires only that a defendant act recklessly; and 2) the relevant provision of the New Jersey robbery statute does not require the use of violent physical force. *See* Pet.'s Suppl. Mot. 16-20. West therefore asks this Court to vacate and correct his sentence.

The Government counters that West's motion should be dismissed on the procedural grounds that it does not satisfy the requirements for second or successive petitions, is time-barred, and is procedurally defaulted. *See* U.S.'s Opp'n to Def.'s Mot. & Suppl. Mot. Vacate J. Under 28 U.S.C. § 2255 ("U.S.'s Opp'n") 11-19 [Dkt. # 64]. On the merits, the Government argues that West's prior convictions for assault and robbery qualify as violent felonies under ACCA's elements clause and that West's sentence should therefore stand. *Id.* at 19-32. Upon consideration of the pleadings and the relevant law, and for the reasons discussed below, I agree with the Government that West's motion to vacate and correct his sentence is procedurally barred and, in any event, fails on the merits.

## BACKGROUND

Federal law prohibits convicted felons, such as West, from possessing firearms. *See* 18 U.S.C. § 922(g)(1). On October 1, 2004, a jury convicted West of violating that prohibition. *See* 10/1/2004 Minute Entry. Generally, prior felons found guilty of unlawfully possessing a handgun in violation of § 922(g)(1) face up to 10 years' imprisonment. *See* 18 U.S.C. § 924(a)(2). That sentencing calculus changes, however, if the individual qualifies for a sentencing enhancement under ACCA.

As relevant here, ACCA provides that a defendant convicted of violating § 922(g)(1) is subject to a mandatory minimum prison term of 15 years if the defendant has three prior convictions for a "violent felony." *Id.* § 924(e)(1). ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves use of explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B). Those provisions, respectively, have come to be known as ACCA's "elements clause," "enumerated clause," and "residual clause." *See United States v. Booker*, 240 F. Supp. 3d 164, 167 (D.D.C. 2017).

At the time of his § 922(g)(1) conviction in this Court, West's prior felony record included New Jersey state convictions for second-degree aggravated assault, third-degree aggravated assault, and second-degree robbery. Pet.'s Suppl. Mot. 2; *see* 2/8/2005 Revised Presentence Investigation Report ("PSR") 6-8. Based on that record, both the Government and West agreed with the Probation Office's conclusion that West was subject to a mandatory minimum of 15 years' imprisonment under ACCA. *See* PSR ¶ 15 ("[T]he defendant has at least 3 prior convictions for 'violent felonies' as defined under 18 U.S.C. § 924(e)(2)."); *see id.* ¶ 67 & p.16. I accepted that assessment and, on March 24, 2005, sentenced West to a prison term of 216 months. *See* Judgment 1-2 [Dkt. # 29].

Over a decade later, during which West tried but failed to set aside his conviction and sentence both on direct appeal and through multiple collateral challenges,[1] the Supreme Court issued its 2015 decision in *Johnson v. United States* ("*Johnson* 2015"), 135 S. Ct. 2551 (2015). In that decision, for reasons this Court need not detail, the Supreme Court struck down ACCA's "residual clause" as unconstitutionally vague. *See id.* at 2563. The next year, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson* 2015 announced a new, substantive constitutional rule and, as such, applied retroactively to cases on collateral review. *See id.* at 1265.

Shortly after the decision in *Welch*, the Chief Judge of our Court issued a Standing Order containing procedures to be followed by defendants asserting post-*Johnson* 2015 challenges to their sentences. *See generally* 6/2/2016 Standing Order.[2] The Standing Order appointed the Office of the Federal Public Defender for the District of Columbia to represent eligible defendants who may qualify for relief from their sentences under *Johnson* 2015 and *Welch*. *Id.* at 1. Pursuant to the Standing Order's instructions, West, through counsel, filed an abridged motion under 28 U.S.C. § 2255 to vacate and correct

---

[1] Our Circuit affirmed West's conviction on direct appeal, rejecting all of West's challenges to this Court's pretrial evidentiary rulings and *voir dire* procedures. *See generally United States v. West*, 458 F.3d 1 (D.C. Cir. 2006). In April 2008, West filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Dkt. # 41]; that motion was dismissed as time barred. *See* 6/8/2009 Mem. Order 4 [Dkt. # 46]. In 2013, West again petitioned for a correction of his sentence, arguing that the Presentence Investigation Report had incorrectly computed his criminal history score. *See* Mot. Court to Order That Probation Dep't Correct P.S.I. Report 1 [Dkt. # 47]. This Court construed West's motion as one under § 2255 and, after ordering a response from the Government, denied the motion on procedural grounds. *See* 5/12/2014 Mem. Order 3-4 [Dkt. # 54]. Shortly after the issuance of that memorandum order, West filed yet another motion under § 2255, raising "almost identical" arguments as those contained within his first § 2255 motion filed in 2008. 5/2/2016 Mem. Order 3 [Dkt. # 56]. That motion was subsequently dismissed as procedurally barred. *See id.* at 3-4.

[2] The June 2, 2016 Standing Order is available at http://www.dcd.uscourts.gov/sites/dcd/files/1853_001.pdf.

his sentence in light of *Johnson* 2015. *See generally* Pet.'s Mot. After receiving permission to file a second or successive § 2255 motion from D.C. Circuit, *see In re Matthew West*, No. 16-3049 (D.C. Cir. July 1, 2016) ("Circuit Order") [Dkt. # 58], West filed the supplemental § 2255 motion currently pending before the Court, *see* Pet.'s Suppl. Mot.

## ANALYSIS

28 U.S.C. § 2255 permits a federal prisoner such as West to file a motion to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States" or "was in excess of the maximum authorized by law." *Id.* § 2255(a). In his supplemental motion, West argues that he is entitled to relief under the terms of § 2255 because he no longer qualifies as an armed career criminal under ACCA—and thus cannot lawfully be subjected to ACCA's 15-year mandatory minimum—following *Johnson* 2015's invalidation of the residual clause. *See* Pet.'s Suppl. Mot. 2. That is so, West asserts, because his prior felony convictions for New Jersey second-degree aggravated assault, third-degree aggravated assault, and second-degree robbery do not qualify as violent felonies under the remaining applicable ACCA provision known as the elements clause. *See id.* at 13-21. West therefore asks this Court to grant his § 2255 motion, vacate his original mandatory-minimum sentence, and either resentence or discharge him. *Id.* at 22-23.

The Government opposes West's motion on both procedural and substantive grounds. To start, the Government argues that West's motion does not satisfy the statutory requirements for a second or successive § 2255 motion—specifically, the

requirement that his claim "relies on a new rule of constitutional law." 28 U.S.C. § 2244(b)(2)(A); *see* U.S.'s Opp'n 11-15. In the alternative, the Government argues that West's motion is untimely under § 2255(f)'s one-year statute of limitations and is procedurally defaulted due to West's failure to raise his ACCA claims at trial or on direct appeal. *See* U.S.'s Opp'n 15-19. On the merits, the Government asserts that *Johnson* 2015 does not entitle West to relief because West's prior convictions for New Jersey aggravated assault and robbery qualify as violent felonies—and thus expose him to ACCA's 15-year mandatory minimum sentence—under ACCA's still-valid elements clause. *See id.* at 19-32. Having considered those arguments, I agree with the Government that West's § 2255 petition should be DENIED. A discussion of the various procedural and substantive issues presented by West's motion will quite clearly demonstrate why.

## A. Procedural Requirements

Federal law erects several procedural hurdles that federal habeas petitioners must clear before their claims may be considered on the merits. The Government argues that West's motion fails to clear two such procedural hurdles.[3]

---

[3] In arguing that this Court should reject the Government's procedural arguments, West points out that our Circuit authorized the filing of his motion. *See* Pet.'s Suppl. Mot. 8 & nn. 8-9; *see also* Circuit Order. Such authorization, however, is granted simply upon a petitioner's "prima facie showing that the application satisfies" the applicable statutory requirements for second or successive motions. 28 U.S.C. § 2244(b)(3)(C). As such, circuit authorizations do not absolve district courts of their statutory directive to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies" the relevant statutory requirements. *Id.* § 2244(b)(4); *see, e.g., Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) (noting that § 2244 establishes different standards of review for successive motions by courts of appeals and district courts). I therefore must engage in a de novo evaluation of the appropriateness of West's motion under the governing provisions. *See* Brian R. Means, *Federal Habeas Manual* § 11:82 (2018 ed.) (collecting cases).

First, the Government argues that West's motion fails to satisfy the threshold standard for a second or successive motion under 28 U.S.C. § 2255. That standard, in relevant part, authorizes a district court to entertain a second or successive § 2255 motion only when the applicant shows that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2255(h)(2); *see also id.* § 2244(b)(2)(A). The Government contends that West has failed to carry his threshold burden to show that his motion in fact "relies" upon *Johnson* 2015. *Id.* § 2255(h)(2). That conclusion follows, the Government asserts, because West has not demonstrated that his mandatory minimum sentence was indeed rendered pursuant to ACCA's now-invalid residual clause, as opposed to the constitutionally permissible elements clause.

Second, the Government argues that West's motion runs afoul of the one-year statute of limitations period applicable to § 2255 motions. *See id.* §2255(f). When a habeas petitioner asserts a challenge based upon a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," the one-year limitations period begins running on "the date on which the right asserted was initially recognized by the Supreme Court." *Id.* § 2255(f)(3). The Government concedes that *Johnson* 2015 triggered a new one-year period for the filing of § 2255 motions, *see* U.S.'s Opp'n 16; West's initial post-*Johnson* 2015 petition, moreover, was filed within that one-year period. *See generally* Pet.'s Mot. Notwithstanding those considerations, the Government maintains that West's claim is untimely because, without demonstrating that he was sentenced pursuant to the residual clause (as opposed to the elements clause),

West cannot show that his claim is "in fact predicated on" *Johnson* 2015's invalidation of the residual clause. U.S.'s Opp'n 17.[4]

As the above discussion indicates, the Government's procedural arguments are largely premised on West's alleged failure to demonstrate that he was sentenced pursuant to the now-defunct residual clause (as opposed to the elements clause). Whether and to what extent a defendant must make that showing to overcome procedural objections under § 2244 and § 2255 is a question that has divided courts fielding the influx of post-*Johnson* 2015 habeas petitions.

On one side of the issue, several courts—including some of my colleagues—have held that, to overcome the various procedural hurdles applicable to collateral habeas challenges, a post-*Johnson* 2015 habeas petitioner need only show that his sentence "*may have* been predicated on application of the now-void residual clause." *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (emphasis added); *see also, e.g., United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017); *Booker*, 240 F. Supp. 3d at 169; *United States v. Wilson*, 249 F. Supp. 3d 305, 311-13 (D.D.C. 2017); *United States v. Butler*, 253 F. Supp. 3d 133, 140-41 (D.D.C. 2017). Under that framework, for which West advocates, a sentencing court's "silence regarding the basis of the defendant's

---

[4] As an alternative to its statutory procedural arguments, the Government also argues that any *Johnson* 2015 claim by West should be dismissed as procedurally defaulted. Under the procedural default doctrine, a court typically may not consider "an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). A number of my colleagues have convincingly rejected similar procedural default arguments by the Government in the context of post-*Johnson* 2015 § 2255 motions. *See, e.g., United States v. Butler*, 253 F. Supp. 3d 133, 141-42 (D.D.C. 2017); *United States v. Wilson*, 249 F. Supp. 3d 305, 314-15 (D.D.C. 2017); *Booker*, 240 F. Supp. 3d at 170-71. I agree with their thorough analyses and thus will not spill any additional ink rejecting the Government's claim of procedural default.

sentence" is "construed . . . in the petitioner's favor." *Dimott v. United States*, 881 F.3d 232, 240 n.6 (1st Cir. 2018) (citing *In re Chance*, 831 F.3d 1335, 1341 (11th Cir. 2016)). Such a rule is necessary, according to the courts that have adopted it, to avoid an "absurd" scheme under which "certain criminal defendants would be barred from raising an otherwise cognizable claim under *Johnson* (2015) because the sentencing judge did not specify which clause she was relying on at a time when that was not required." *Butler*, 253 F. Supp. 3d at 140 (internal quotation marks omitted). "To require more," some courts have cautioned, "would render *Johnson* relief virtually impossible to obtain." *Booker*, 240 F. Supp. 3d at 169 (internal quotation marks omitted).

Other courts have adopted a more stringent threshold rule under which a post-*Johnson* 2015 habeas petitioner "bears the burden of establishing that it is *more likely than not* that he was sentenced solely pursuant to ACCA's residual clause." *Dimott*, 881 F.3d at 243 (emphasis added) (dismissing *Johnson* 2015 claim as untimely); *see also Beeman v. United States*, 871 F.3d 1215, 1223-25 (11th Cir. 2017) (dismissing *Johnson* 2015 claim because petitioner "failed to prove—that it was more likely than not—he in fact was sentenced as an armed career criminal under the residual clause"); *United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018) (rejecting argument that defendant need only show that the "district court *could* have relied on the residual clause" and instead holding that "the burden is on the defendant to show by a preponderance of the evidence—*i.e.*, that it is more likely than not—his claim relies on *Johnson*" (emphasis added)). Courts taking that approach have done so in view of the fact that their precedents interpreting the Antiterrorism and Effective Death Penalty Act ("AEDPA")

place the burden of proof and production on post-conviction petitioners. *See Dimott*, 881 F.3d at 240; *Beeman*, 871 F.3d at 1222-23; *Washington*, 890 F.3d at 895. According to those courts, adopting a contrary rule that "treat[s] *Johnson* claimants differently than all other § 2255 movants claiming a constitutional violation" would lead to arbitrary results. *Beeman*, 871 F.3d at 1224. It would also turn § 2255's burden of proof on its head, thereby "undercut[ting] an animating principle of AEDPA: the presumption of finality." *Dimott*, 881 F.3d at 240.

In my view, the latter approach, under which a post-*Johnson* 2015 habeas petitioner bears the burden of showing by a preponderance of the evidence that he was sentenced pursuant to the residual clause, is more consistent with the "clear limits established by Congress for when federal post-conviction petitions may be entertained by the federal courts." *Id.* at 241. Allowing petitioners to evade AEDPA's procedural requirements by pointing to a "mere possibility" that their claims turn on *Johnson* 2015 cannot be squared with the statutory text of § 2244(b), under which a habeas "applicant must actually 'show' that the claim satisfies the standard" for second or successive petitions. *Id.* at 240; *see Tyler*, 533 U.S. at 661 n.3 (alteration omitted). Nor does such an approach accord with the "presumption of finality and legality" that attaches to judgments and sentences following the process of direct review. *Dimott*, 881 F.3d at 241 (citing *In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (internal quotation marks omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

To be sure, requiring post-*Johnson* 2015 petitioners to support—as opposed to merely assert—the conclusion that they were likely sentenced pursuant to the residual

clause will result in fewer successful collateral challenges. But "[t]hat the burden is less friendly to petitioners" than the one West prefers "does not make it unequal" or otherwise improper, *Dimott*, 881 F.3d at 242, especially "in light of society's legitimate interest in the finality of judgments," *United States v. Zakas*, 793 F. Supp. 2d 77, 80 (D.D.C. 2011); *cf. Beeman*, 871 F.3d at 1224 ("It is no more arbitrary to have the movant lose in a § 2255 proceeding because of a silent record than to have the Government lose because of one. What would be arbitrary is to treat *Johnson* claimants differently than all other § 2255 movants claiming a constitutional violation."). Moreover, as the Tenth Circuit has noted, post-*Johnson* 2015 petitioners are not without means to carry their burden; rather, the "relevant background legal environment that existed at the time of the defendant's sentencing" will often be of use in determining "whether the district court relied on the residual clause in sentencing." *Washington*, 890 F.3d at 896 (internal quotation marks omitted) (quoting *United States v. Snyder*, 871 F.3d 1122, 1128-30 (10th Cir. 2017)); *see also Beeman*, 871 F.3d at 1224 n.4 (noting the kinds of direct and circumstantial evidence that may be used to show whether a defendant was sentenced under the residual clause).

Here, West acknowledges that the available sentencing-stage documents, including the parties' sentencing memoranda and the Presentence Investigation Report, do not specify the ACCA provision upon which his sentence was based. *See* Pet.'s Suppl. Mot. 3-4.[5] Unfortunately for West, moreover, a review of the "relevant

---

[5] As defendant notes in his supplemental motion, the sentencing transcript was unavailable at the time of the parties' briefing in this case. Following the filing of the instant motion and the associated opposition and reply briefs, however, the Court Reporters' office was able to locate the sentencing transcript. The Court's review of that transcript confirms that neither the parties nor the Court cited any particular provision of ACCA during the sentencing proceedings.

background legal environment that existed at the time of [his] sentencing" undermines, rather than supports, the argument that he was likely sentenced under the residual clause. *Washington*, 890 F.3d at 896 (internal quotation marks omitted). How so?

As of the time of West's sentencing, our Circuit's precedents characterized § 924(e)(2)(B) as setting forth "two subcategories of prior criminal conduct: First, there are felonies against the *person* that have as an element the use or threat of physical force; and, second, there are felonies against *property* (such as burglary, arson, extortion, etc.) that present a serious potential risk of physical injury." *United States v. Mathis*, 963 F.2d 399, 405 (D.C. Cir. 1992). Given that precedent, it is unsurprising that, prior to West's sentencing, assault and robbery convictions were often analyzed under the elements clause—not the residual clause. *See, e.g., id.* at 408 (analyzing D.C. Code robbery under ACCA's elements clause); *United States v. Williams*, 358 F.3d 956, 965-66 (D.C. Cir. 2004) (same); *cf. United States v. Hill*, 131 F.3d 1056, 1062-63 (D.C. Cir. 1997) (referencing elements clause of Guidelines in discussion of whether attempted robbery conviction was crime of violence). In such a situation, where neither the sentencing record nor the governing precedents at the time of sentencing support the conclusion that a sentence was rendered pursuant to the residual clause, West, as "the party with the burden[,] loses." *Beeman*, 871 F.3d at 1224. Thus, because West has failed to show that he was more likely than not sentenced under the residual clause rather than the elements clause, his asserted reliance on *Johnson* 2015 is insufficient to excuse him from the procedural requirements of § 2244 and § 2255.

Recognizing the unsettled state of the law on the showing required by post-*Johnson* 2015 habeas petitioners, however, I decline to dispose of West's petition solely on the procedural grounds advanced by the Government. *Cf. United States v. Hicks*, 285 F. Supp. 3d 150, 154 (D.D.C. 2018) (concluding that "§ 2255 motion must be dismissed as untimely" but explaining why, "[e]ven if not untimely," the motion "would fail on the merits"); *Gewin v. Dodrill*, 779 F. Supp. 2d 27, 43 (D.D.C. 2011) (discussing "why, even assuming the petitions were not procedurally barred, they would fail on the merits"). Instead, as explained below, even assuming that West's motion satisfies the relevant procedural requirements, the motion fails on the merits.

## B. Merits of West's § 2255 Motion

In his supplemental motion, West asserts that his prior New Jersey assault and robbery convictions do not qualify as violent felonies under the elements clause. He therefore claims that, following *Johnson* 2015's invalidation of the residual clause, he no longer qualifies for ACCA's 15-year mandatory minimum sentence. Unfortunately for West, I disagree. Before explaining why, it is necessary to provide a brief overview of the framework for evaluating West's prior convictions.

To determine whether a prior conviction qualifies as a "violent felony" under ACCA, "courts use what has become known as the 'categorical approach.'" *Descamps v. United States*, 570 U.S. 254, 257 (2013). Under that approach, courts determine whether a defendant's prior offense of conviction constitutes a "violent felony" for purposes of ACCA by looking solely to the elements of the offense, as opposed to the defendant's actual conduct. *See Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016); *see also*

*Johnson* 2015, 135 S. Ct. at 2557. In other words, if the statutory *elements* of the offense criminalize conduct beyond that which ACCA covers, then, under the categorical approach, the offense does not qualify as a "violent felony"—even if, in committing the offense, the defendant clearly engaged in violent *conduct*.[6]

In this case, the upshot of the categorical approach is this: If the *least serious* conduct criminalized by the New Jersey assault and robbery statutes does not involve "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), that offense categorically does not qualify as a "violent felony" under ACCA. *See Descamps*, 570 U.S. at 261.[7] With that rule in mind, I now examine West's prior convictions for New Jersey aggravated assault and robbery.

### 1. New Jersey Aggravated Assault Convictions

As should be familiar by now, ACCA's elements clause defines a "violent felony" as one that "has as an element the use, attempted use, or threatened use of physical force

---

[6] Many jurists have questioned the propriety of the categorical approach, noting that it "forces judges into an alternative reality" under which "repeat offenders often avoid sentencing enhancements for their violent crimes." *United States v. Chapman*, 866 F.3d 129, 137-38 (3d Cir. 2017) (Jordan, J., concurring); *see also id.* (collecting cases questioning categorical approach); *Mathis*, 136 S. Ct. at 2267-71 (Alito, J., dissenting) (categorical approach "calls for sentencing judges to delve into pointless abstract questions" and "has increasingly led to results that Congress could not have intended"). In view of West's actual conduct as reported in the PSR—conduct that involved pummeling an individual in the head five times with a sawed off shot gun, beating a fellow inmate in the face, and forcefully removing jewelry from a victim, *see* PSR ¶¶ 24-26—this case provides yet another troubling example of how the categorical approach requires judges to "ignore facts already known and instead proceed with eyes shut," *Chapman*, 866 F.3d at 138 (Jordan, J., concurring).

[7] There is one wrinkle when applying this general rule. When a court is "dealing with a so-called 'divisible' statute," it must "employ the 'modified categorical approach' to determine which alternative crime the defendant committed." *United States v. Redrick*, 841 F.3d 478, 482 (D.C. Cir. 2016). To do so, the court "look[s] beyond the statute 'to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, the defendant was convicted of.'" *Id.* (internal quotation marks and alteration omitted) (quoting *Mathis*, 136 S. Ct. at 2249). Upon confirming the statutory provision under which a defendant was convicted, the court proceeds to apply the categorical approach to that crime.

against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). West argues that his convictions for New Jersey second- and third-degree aggravated assault do not qualify as violent felonies under that provision. Pet.'s Suppl. Mot. 16-18.[8] West's argument is premised on the fact that New Jersey second-degree and third-degree aggravated assault can be violated with a *mens rea* of recklessness. *Id.* at 17. Relying heavily upon the analysis of a few of my district court colleagues, West argues that a "reckless application of force is not sufficient to constitute the 'use' of physical force" under the elements clause. *Id.* (internal quotation marks omitted); *see also* Supplement to Reply Mem. Supp. Mot. & Suppl. Mot. to Vacate Judgment Under 28 U.S.C. § 2255, at 1 [Dkt. # 68] (noting that "multiple district courts in this circuit have rejected the Government's argument that a reckless *mens rea* is sufficient for a crime to qualify as a 'violent felony' under the elements clause").

Unfortunately for West, his argument is foreclosed by our Circuit's recent opinion in *United States v. Haight*, No. 16-3123, 2018 WL 3077534 (D.C. Cir. June 22, 2018). In

---

[8] At the time of West's New Jersey convictions, New Jersey defined second-degree and third-degree aggravated assault, respectively, as follows:

b. Aggravated assault. A person is guilty of aggravated assault if he:

(1) Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury; or . . .
(7) Attempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury . . . .

N.J.S.A. §2C:12-1(b); *see id.* § 2C:12-1(b)(13); Pet.'s Suppl. Mot. 16-17 & n.11. The United States agrees with West that, based on that statutory language, a "conviction for second-degree or third-degree aggravated assault in New Jersey can be sustained by proof of reckless conduct alone." U.S.'s Opp'n 19.

*Haight*, Judge Kavanaugh, joined by Chief Judge Garland and Judge Srinivasan, squarely confronted and rejected the argument that an assault that "can be committed recklessly . . . does not categorically require the use of violent force 'against the person of another' within the meaning of ACCA." *Id.* at *6-7, slip op. at 14. Relying on the Supreme Court's 2016 decision in *Voisine v. United States*, 136 S. Ct. 2272, which held that reckless assaults qualify as "the use or attempted use of physical force" under 18 U.S.C. § 921(a)(33)(A)(ii), *id.* at 2278, our Circuit concluded that "[a]s long as a defendant's use of force is not accidental or involuntary, it is 'naturally described as an active employment of force,' regardless of whether it is reckless, knowing, or intentional." *Haight*, 2018 WL 3077534, at *7, slip op. at 15 (quoting *Voisine*, 136 S. Ct. at 2279).[9] That holding controls here: West's convictions for New Jersey second- and third-degree aggravated assault qualify as violent felonies under ACCA's elements clause, notwithstanding the fact that those offenses may be committed with a *mens rea* of recklessness.[10]

---

[9] In so holding, our Circuit joined "four other courts of appeals that have addressed the issue either in the ACCA context or in the equivalent Guidelines 'crime of violence' context." *Haight*, 2018 WL 3077534, at *7, slip op. at 15-16 (citing *United States v. Mendez-Henriquez*, 847 F.3d 214, 220-22 (5th Cir. 2017); *United States v. Verwiebe*, 874 F.3d 258, 262 (6th Cir. 2017); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016); *United States v. Pam*, 867 F.3d 1191, 1207-08 (10th Cir. 2017)).

[10] In his reply brief, West argues, for the first time, that the assault statute's "requirement that a defendant 'cause serious or significant bodily injury' simply does not constitute a requirement that the defendant 'use, attempt to use, or threaten to use violent physical force.'" Reply Mem. Support Pet.'s Mot. & Suppl. Mot. 39 (internal quotation marks omitted) [Dkt. # 67]; *see id.* 33 n.13. Not only is that argument forfeited, *see Harrison v. Office Architect of Capitol*, 68 F. Supp. 3d 174, 183 (D.D.C. 2014) (collecting cases), it is unpersuasive. West has not credibly articulated how, in the context of an aggravated *assault* statute, there is "a realistic probability" that a defendant would be convicted of causing "serious" or "significant" "bodily injury to another" without also applying force to that person. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013); *see United States v. Horton*, 461 F. App'x 179, 184 (3d Cir. 2012) (New Jersey assault statute "requires, as an element of the offense, the use of force sufficient to cause physical pain or injury"). To the extent, moreover, that West relies on a distinction between direct and indirect uses of force, that argument too runs headlong into the reasoning of the *Haight* Court, which

## 2. New Jersey Robbery Conviction

West argues that he is entitled to relief for a second, independent reason. According to West, his New Jersey second-degree robbery conviction does not qualify as a "violent felony" under the elements clause, as interpreted in *(Curtis) Johnson v. United States*, 559 U.S. 133 (2010), because the statutory section under which he was convicted requires only the use of *de minimis*—as opposed to "violent"—physical force. Pet.'s Suppl. Mot. 19-20 (quoting *(Curtis) Johnson*, 559 U.S. at 140).

The parties agree that this Court should apply the modified categorical approach to determine the provision of the New Jersey robbery statute under which West was convicted. *See id.* at 19; U.S.'s Opp'n 28. Applying the modified categorical analysis, both sides also agree that West was convicted under N.J.S.A. § 2C:15-1(a)(1). That provision specifies that a person is guilty of second-degree robbery "if, in the course of committing a theft, he: (1) Inflicts bodily injury or uses force upon another." N.J.S.A. § 2C:15-1(a)(1). Although the parties debate whether subsection (a)(1) sets forth two means by which an individual can commit robbery or instead two separate elements, I need not resolve that dispute here. That is because, even applying the categorical approach to the "least of the[]" means of committing second-degree robbery specified by subsection (a)(1)—namely, "us[ing] force upon another," Pet.'s Suppl. Mot. 20; N.J.S.A.

---

rejected the notion that there was "any such distinction between direct and indirect force in the language of the statute or in the relevant precedents." *Haight*, 2018 WL 3077534, at *6, slip op. at 13. For all of those reasons, I decline West's invitation to engage in "the kind of creative speculation the Supreme Court has proscribed" by adopting his belated argument based on the New Jersey assault statute's bodily injury requirement. *Redrick*, 841 F.3d at 485.

§ 2C:15-1(a)(1)—I conclude that subsection (a)(1) satisfies ACCA's elements clause. How so?

West's argument with respect to his New Jersey second-degree robbery conviction relies on the Supreme Court's decision in *(Curtis) Johnson*. In that case, the Supreme Court held that the term "force" as used in ACCA's elements clause "means *violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. In so holding, the Court distinguished "force" as used in ACCA from the "more specialized legal usage of the word 'force,'" which "describ[ed] one of the elements of the common-law crime of battery" and could be "satisfied by even the slightest offensive touching." *Id.* at 139. Applying its definition of force, the Supreme Court concluded that a conviction for simple battery under Florida law, which required "proof of only the slightest unwanted physical touch," did not satisfy ACCA's elements clause. *Id.* at 136-37, 145.

Here, West argues that the second-degree robbery subsection under which he was convicted requires only a showing of *de minimis* force and therefore does not satisfy the elements clause as interpreted by *(Curtis) Johnson*.[11] I agree with the Government, however, that the premise of West's argument is incorrect: As interpreted by the New Jersey Supreme Court, subsection (a)(1) does not permit a second-degree robbery conviction to be obtained based on a defendant's use of mere *de minimis* force. Rather,

---

[11] The question whether a robbery that may be committed with only "slight" force satisfies *(Curtis) Johnson*'s reading of the elements clause will be argued before the Supreme Court later this year. *See Stokeling v. United States*, 138 S. Ct. 1438 (Mem.) (2018). As discussed below, however, I conclude that New Jersey's second-degree robbery statute, as interpreted by the New Jersey Supreme Court, requires more than mere *de minimis* or "slight" force.

as explained at length in *New Jersey v. Sein*, 590 A.2d 665 (N.J. 1991), subsection (a)(1) was intended to cover more forceful takings of property than those prohibited by the state's theft statute. The *Sein* Court noted that although "[s]ome jurisdictions have construed the term 'force' as used in the state's robbery statute" to require only "the amount of physical energy necessary to take the property," New Jersey's robbery statute does not reflect that approach. *Id.* at 667-68. The statute instead "adopt[s] the majority rule," under which a "secret or sudden taking of property from the owner without putting him in fear and without open violence is deemed larceny, but if there be struggle to keep it or any violence or disruption, the taking is robbery." *Id.* at 668, 670 (internal quotation marks and alteration omitted).

Against that backdrop, the *Sein* decision makes clear that the "force" clause of subsection (a)(1) covers "only those" takings "that involve some degree of force to *wrest* the object from the victim." *Id.* at 669 (internal quotation marks omitted). "To 'wrest,'" the *Sein* Court goes on to explain, "is to 'pull, force, or move by *violent* wringing or twisting movements.'" *Id.* (emphasis added) (quoting *Webster's Third New International Dictionary* 2640 (1971)). In enacting subsection (a)(1) of the robbery statute, then, the New Jersey "Legislature apparently determined that the *violence* associated with 'wresting' is deserving of more severe punishment" than any force associated with the "simple snatching or sudden taking of property from the person of another." *Id.* (internal quotation marks omitted); *see also New Jersey v. Farrad*, 753 A.2d 648, 654 (N.J. 2000)

(New Jersey robbery statute "addresses the criminal who is prone to use *violence*" to take a person's property (emphasis added) (internal quotation marks omitted)).[12]

Ultimately, the *Sein* Court held that a defendant's "sudden snatching of a purse from the grasp of its owner," during which the defendant used no force other than that required to slide the purse" from under the victim's arm, did not "involve the type of force" required to support a conviction under the robbery statute. 590 A.2d at 666. Subsequent New Jersey cases applying the teachings of *Sein* confirm that convictions under the robbery statute require an "elevate[d]" showing of force as compared to convictions under the theft statute. *Id. Compare New Jersey v. Pantusco*, 750 A.2d 107, 111-14 (N.J. Super. Ct. App. Div. 2000) (evidence that the defendant, while in his vehicle, "grabbed" victim's purse and "accelerat[ed] the gas," thereby "dragging or pulling the victim[]," was sufficient to sustain robbery convictions), *abrogated on other grounds by New Jersey v. Hill*, 868 A.2d 290 (N.J. 2005); *New Jersey v. Baldwin*, 2015 WL 8547003, at *2 (N.J. Super. Ct. App. Div. Dec. 14, 2015) (upholding robbery conviction where victim testified that defendant's "grabbing motion pulled her out of the car" and "spun her around") (brackets omitted); *New Jersey ex rel. Q.M.*, 2013 WL

---

[12] *New Jersey v. Sewell*, 603 A.2d 21 (N.J. 1992), upon which West relies, is not to the contrary. In *Sewell*, the New Jersey Supreme Court examined the *mens rea* showing necessary to sustain a conviction under subsection (a)(1). *See id.* It did not analyze the amount of *force* required under subsection (a)(1). Indeed, the evidence in *Sewell* "support[ed] a finding that all three" victims of defendant's actions "suffered 'bodily injury'" as defined by New Jersey statute. *Id.* at 22.

The circuit cases cited by West are also unavailing. As the Government points out, the statutes at issue in those cases cover lesser degrees of force than does subsection (a)(1). *See, e.g., United States v. Winston*, 850 F.3d 677, 685 (4th Cir. 2017) (Virginia common law robbery, which "encompass[es] a range of *de minimis contact* by a defendant," does not satisfy elements clause (emphasis added)); *United States v. Eason*, 829 F.3d 633, 640-42 (8th Cir. 2016) (Arkansas robbery statute, which covers takings made with "*any* . . . bodily impact," does not satisfy elements clause (emphasis added)); *United States v. Parnell*, 818 F.3d 974, 978 (9th Cir. 2016) (Massachusetts robbery statute, which covers use of "any force, *however slight*," to obtain property, does not satisfy elements clause (emphasis added)).

69245, at *3 (N.J. Super. Ct. App. Div. Jan. 8, 2013) (sufficient evidence to establish robbery where defendant "slapped the employee in furtherance" of theft from store); *New Jersey v. Horton*, 2007 WL 506455, at *3 (N.J. Super. Ct. App. Div. Feb. 20, 2007) (victim's testimony that "defendant pushed her shoulder and engaged in a tug of war for her purse" and only secured purse "after the strap on her bag broke" was sufficient to support robbery conviction), *with New Jersey v. Smalls*, 708 A.2d 737, 739-40 (N.J. Super. Ct. App. Div. 1998) (evidence that defendant "bump[ed]" victim's "jacket pocket" in the course of taking her wallet was not "sufficient evidence of force to raise" pick pocket offense from theft "to a second degree robbery").

Thus, in contrast to the state statute at issue in *(Curtis) Johnson*, subsection (a)(1) requires more than "nominal contact" or "the slightest offensive touching." 559 U.S. at 138-39. As the *Sein* decision emphasizes, a conviction for robbery under subsection (a)(1)'s force clause will stand only when there has been a showing of an "elevat[ed]" use of force by the defendant. *Sein*, 590 A.2d at 666. Specifically, to be found guilty of robbery under subsection (a)(1), a defendant must have engaged in the "*violence* associated with 'wresting'"—that is, "pull[ing], forc[ing], or mov[ing] by *violent* wringing or twisting movements"—something from the victim. *Id.* at 669 (emphasis added) (internal quotation marks omitted).

In my view, subsection (a)(1)'s prohibition of those types of "violent . . . movements" "exerted 'upon another,'" *id.*, covers "violent force—that is, force capable of causing physical pain or injury to another person"—as required by ACCA's elements clause, *(Curtis) Johnson*, 559 U.S. at 140. *Compare id.* at 139 (definition of force

includes, among other things "*strength* or energy; active *power*; vigor" (emphasis added) (internal quotation marks omitted)), *with Sewell*, 603 A.2d at 27 (force required by robbery statute is the degree of "physical *power* or *strength* required to overcome physical resistance to taking of property" (emphasis added)). Adhering to the New Jersey Supreme Court's interpretation of the state's robbery statute, I therefore conclude that subsection (a)(1) of the statute "meets the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B)(i)." *(Curtis) Johnson*, 559 U.S. at 138; *see also Baker v. United States*, No. 3:16-cv-367, 2018 WL 3037430, at *4-5 (W.D.N.C. June 19, 2018) (concluding that New Jersey's second-degree robbery statute "require[s] sufficient physical force to qualify as a violent felony under ACCA"); *cf. United States v. Garcia*, 877 F.3d 944, 950-54 (10th Cir. 2017) (New Mexico robbery statute, which is "distinct from larceny because it requires, and is designed to punish, the element of force," is violent felony under elements clause (internal quotation marks omitted)). For that reason, I reject West's argument based on his New Jersey second-degree robbery conviction.[13]

---

[13] My conclusion on this score finds additional support in *(Curtis) Johnson* itself, which observes that *Black's Law Dictionary* defines "'physical force' as 'force consisting in a physical act, *esp. a violent act directed against a robbery victim.*'" 559 U.S. at 139 (emphasis added) (brackets omitted); *cf. Castleman*, 134 S. Ct. at 1421 (Scalia, J., concurring) ("hitting, slapping, shoving, grabbing, pinching, biting and hair pulling" are all "capable of causing physical pain or injury" (alterations omitted) (citing *(Curtis) Johnson*, 559 U.S. at 143)). Some courts have nonetheless concluded that certain robbery statutes requiring more than *de minimis* acts of force do not satisfy the elements clause's force requirement. *See, e.g., United States v. Walton*, 881 F.3d 768, 773-74 (9th Cir. 2018) (Alabama robbery conviction based on evidence that defendant "pushed or shoved [victim] back into a corner" did not reflect sufficient level of "force" to satisfy elements clause); *United States v. Gardner*, 823 F.3d 793, 803-04 (4th Cir. 2016) (North Carolina case upholding robbery conviction where defendant "pushed the shoulder of an electronics store clerk, causing her to fall onto shelves," did not reflect sufficient level of "force" under elements clause). I am "not persuaded" by those cases, but instead agree with the courts that have observed that acts such as "[s]hoving a person" clearly "involve[] force capable of producing pain or injury" under *(Curtis) Johnson. Garcia*, 877 F.3d at 954 n.11.

## CONCLUSION

For the foregoing reasons, West's prior convictions for New Jersey second-degree aggravated assault, third-degree aggravated assault, and second-degree robbery qualify as violent felonies under ACCA's elements clause. As such, West's prior convictions render him subject to ACCA's 15-year mandatory minimum, notwithstanding *Johnson* 2015's invalidation of the residual clause. West has therefore failed to demonstrate his entitlement to sentencing relief under 28 U.S.C. § 2255, and the Court accordingly DENIES his pending motions to vacate and correct his sentence. An Order consistent with this decision accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge